UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARCOS PARRENO,                                      :

                Petitioner,                    :          **<u>OPINION AND ORDER</u>**
                                            04 Civ. 10153 (GWG)

     -v.-                                           :

PAUL W. ANNETTS,                                     :

                Respondent.                   :
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Marcos Parreno, proceeding <u>pro se</u>, brings this petition for a writ of habeas corpus

challenging his August 2001 conviction in the Supreme Court of the State of New York, New

York County, for two counts each of Robbery in the First Degree (New York Penal Law

("N.Y.P.L.") § 160.15(4)), Robbery in the Second Degree (N.Y.P.L. § 160.10), and Unlawful

Imprisonment in the First Degree (N.Y.P.L. § 135.10).  Parreno was sentenced to concurrent

prison terms of fifteen years on each of the robbery counts and 1-1/3 to 4 years on each of the

unlawful imprisonment counts.  Parreno's conviction was affirmed by the Appellate Division,

First Department, and leave to appeal to the New York State Court of Appeals was denied.

Parreno is currently incarcerated at Downstate Correctional Facility.  The parties have consented

to the disposition of this case by a United States Magistrate Judge pursuant to 28 U.S.C. §

636(c).  For the reasons stated below, the petition is denied.

I. <u>INTRODUCTION</u>

    A. <u>Evidence at Trial</u>

        1. <u>The Prosecution's Case</u>

From February through November 1999, Marcos Parreno – a native of Ecuador who speaks no English – worked as a garage attendant for the Mallah Organization, which managed several garages in midtown Manhattan. (Borja: T. 154-56, 170-73; Parreno: T. 359).[1] Parreno worked at the Support Parking Garage, on East 52nd Street; the Newbury Garage, on East 86th Street; and the East River Garage, on East 72nd Street. (Borja: T. 155-59). At the Support Parking and East River garages, Parreno worked the overnight shift alone. (Borja: T. 158-160). At the Support Parking Garage, the night attendant would store the night's proceeds underneath a garbage bag in a garbage can under a desk, and the money would be deposited in the bank every few days. (Borja: T. 157-59). At the East River Garage, most of the money from the night shift would be stored in a small metal "cashier box" located in a closet in a room behind the office. A key to open the box was stored in the space between the box and the wall, and could be retrieved with a shirt hanger. Approximately $200 was kept in a desk drawer in the office. (Borja: T. 160-62; Arbelaez: T. 207).

On March 6 or 7, 2000, Parreno called Luis Serna, an attendant with whom he had worked at the Support Parking Garage for "more than a few months," and asked him who was working the overnight shift. Serna told him a new employee, Oscar Osorio, worked that shift. (Serna: T. 182-85). Around the same date, Parreno called Henry Dederle, an attendant with

---

[1] "T." refers to the transcript of Parreno's trial, held June 4-5, 2001. "S." refers to the transcript of Parreno's sentencing, held August 16, 2001. Both transcripts are contained in a single volume and are being docketed herewith.

whom he had worked at the East River Garage, and asked him how the employees were doing, and whether everything was "normal." Dederle told Parreno that a new employee had taken Parreno's old shift at the garage. (Dederle: T. 255-57, 261).

At 7:00 or 8:00 p.m. on March 11, 2000, Serna admitted a 1999 Lexus to the Support Parking Garage. When Osorio replaced Serna at 9:00 p.m., the garage's proceeds were in the garbage can. (Serna: T. 183-84, 186, 188). Around this time, Irving Martinez, the doorman of the building diagonally across from the garage, noticed two men standing near his building and looking directly into the garage. (Martinez: T. 193, 195). One man – whom Martinez later identified in a lineup as Parreno – was about 5'5" or 5'6" with a "very thin build" and an olive complexion. The other was about 5'8" or 5'9" with a thin build. Both men wore dark pants, dark down jackets, and "rolled up" knit ski masks. (Martinez: T. 194, 195, 199). Martinez watched the men "for a while," and at one point Parreno looked directly at him "for a few seconds." Martinez did not say anything to the men, and eventually went back inside the building. (Martinez: T. 195).

At about 9:05 p.m., Osorio received a phone call from a man with "Hispanic"-accented English, asking him to bring up a car from a monthly rental spot. When Osorio went to retrieve the car, it was not in its space. As he returned to the office, he saw a man, about 5'6" tall, wearing a black mask over his face, black pants, a black shirt, and gloves. The man was holding a silver automatic gun. (Osorio: T. 231-233, 243). When Osorio asked the man, in Spanish, what he wanted, the man ordered him to turn around, at which point Osorio saw a second man behind him. This man was about 5'8" and also wore a mask, black pants, a black shirt, gloves, and was carrying a silver automatic pistol. (Osorio: T. 234). The shorter man then hit Osorio

3

with his gun "very lightly" behind his right ear, and started speaking to him in what Osorio recognized as an Ecuadorian or Colombian accent. The man told Osorio not to move or make noise or he would kill him, but he reassured him that everything would be all right. The men pushed Osorio into the trunk of a car, took his office key, and left without asking him where the garage's money was stored. (Osorio: T. 235-39).

About 35 minutes later, Osorio was helped out of the trunk by two other men, and he immediately called the police. Upon returning to the office, he discovered that the door was open and the money stored in the garbage can and in the desk – about $3800 in all – was missing. The 1999 Lexus that Serna had admitted earlier in the evening was also gone. (Borja: T. 166; Osorio: T. 239-41).

At around 10:15 p.m., Alex Arbelaez, the new night attendant at the East River Garage, saw a Lexus being driven "too fast" down a "very narrow" ramp lined with cars, then making a sharp right turn between a line of cars and a support column. (Arbelaez: T. 210-13). Arbelaez thought someone would "have to know the place" to take the turn at that speed. (Arbelaez: T. 213). Two men then exited the car, each wearing a mask, gloves, a black jacket, black pants, and black shoes. The passenger was slightly shorter, and Arbelaez saw that he was carrying a silver pistol. (Arbelaez: T. 213-16). Arbelaez tried to run away, but the shorter man caught him and held the pistol to his neck. The two men then forced Arbelaez into the trunk of a small car. When he argued that he should be placed in a larger trunk, the men told him to "shut the fuck up and get inside the trunk," and the shorter man hit him in the stomach with his gun. (Arbelaez: T. 216-22). The men did not demand money from Arbelaez or ask where it was kept in the garage. (Arbelaez: T. 222).

Arbelaez was released by another customer about 45 minutes later, at which time he discovered that the cash box, which had been full when Arbelaez began his shift, was open. Arbelaez could tell it was opened with a key, since it was "in perfect condition." (Arbelaez: T. 223-226). All the money from the box and some from the desk drawer – about $1500 total – was gone. (Arbelaez: T. 226; Borja: T. 166).

On March 15, 2000, Detective Michael Kennedy, of the Manhattan Robbery Squad, was investigating the robberies when he learned that the 1999 Lexus taken from the Support Parking Garage on March 11 had been found in Queens, about a block from the address on Parreno's driver's license. (Kennedy: T. 271; 273-75). Kennedy did not know of any other ex-employees of Mallah besides Parreno who worked at both garages and lived in that Queens neighborhood. (Kennedy: T. 331-32).

When Kennedy attempted to locate Parreno, he was told he had gone to Ecuador. Upon Parreno's return, on July 12, 2000, he was detained briefly by customs officials, then released. (Kennedy: T. 278-80). Later that day, and in the presence of counsel, Parreno arrived at the District Attorney's office to discuss what he had been told was a complaint against him for failing to repay a $100 advance on his pay at the garage. (Kennedy: T. 283-84). When Kennedy informed Parreno's lawyer privately that Parreno was actually being investigated for the two garage robberies, the lawyer left the office, talked to Parreno, and returned with papers that Parreno had just handed him. (Kennedy: T. 284). The papers included an Ecuadorian immigration certificate purporting to show when Parreno had entered and departed from Ecuador. There was an entry for March 11, 2000, stating that Parreno had entered Ecuador on a flight from the United States, and there were no entries indicating that he had entered Ecuador at

any other time.  See Majid: T. 334-37.  The papers also included a passport with Parreno's photograph and the name Marcos Giovanny Parreno Carranza, but without any stamps indicating he had entered any country on March 11, 2000.  See id.  After looking over the documents, Kennedy stated that he believed they were fake, and he arrested Parreno.  (Kennedy: T. 288-89).

When Saima Majid, a paralegal in the District Attorney's office, later procured from the United States Embassy in Ecuador a certified copy of the immigration certificate Parreno had turned over to Kennedy, it did not contain any reference to a flight on March 11.  (Majid: T. 332-37).  Specifically, while Parreno's copy had handwriting on the front indicating that he had entered Ecuador on March 11, the front of the certified copy had no handwriting.  Similarly, the back of Parreno's certificate listed a March 11 flight into Ecuador; but while the back of the certified document listed five flights, it did not list a March 11 flight.  See Majid: T. 336-37.

Majid also received a certified document from the United States Department of Treasury indicating that in 2000, Parreno had entered the United States through New York on March 4 and July 12.  (Majid: T. 338-39).  Majid also requested passenger manifests for all airlines that flew between Kennedy Airport, in New York, and Ecuador – specifically those manifests containing the name Marcos Giovanny Parreno Carranza or Marcos Giovanny Parreno.  No airline sent her a manifest for March 11, 2000.  (Majid: T. 339-40).  She did receive a manifest from Grupo Taca, which manages several airlines – specifically, the manifest for Flight 660, from Kennedy Airport to Ecuador on April 10, 2000, which included a passenger named "G. Carranza."  (Majid: T. 340-41).  A manifest for Flight 660, from Ecuador to Kennedy Airport on July 11, 2000, contained the name "G. Parreno."  Since both tickets were purchased with cash, it was not possible to confirm whether either of these passengers was Parreno.  (Majid: T. 341-43).

Finally, Majid testified as to the stamps in Parreno's passport indicating his entrances to and exits from the countries he had visited between February 1999 and July 2000. (Majid: T. 343). Of the twelve stamps in the passport, none was dated March 11, 2000. (Majid: T. 345). On cross-examination, Majid testified that the United States does not stamp the passports of people leaving the country. (Majid: T. 355).

2. The Defense's Case

Parreno was the only witness called by the defense.

He testified that he flew from New York to Ecuador on the night of March 11, 2000, on an Ecuadoriana Airlines flight scheduled to depart at 11:00 p.m. (Parreno: T. 363-64). He arrived at the airport at about 10:00 p.m. and the airplane left at approximately 12:20 a.m. (Parreno: T. 364). He stated that when he arrived in Ecuador, the Ecuadorian authorities did not stamp his passport because he could not find it. (Parreno: T. 365). Ultimately, he obtained a certificate from "immigration" in Guayaquil, showing that he had arrived on March 11. (Parreno: T. 365). By the time of the trial, Ecuadoriana Airlines had gone out of business and its passenger manifests no longer existed. (Parreno: T. 393).

B. Verdict, Sentence, and Direct Appeal

The jury found Parreno guilty of two counts each of Robbery in the First Degree, Robbery in the Second Degree, and Unlawful Imprisonment in the First Degree. (T. 483-484). He was sentenced on August 16, 2001, to concurrent terms of fifteen years on each robbery count and 1-1/3 to 4 years on the unlawful imprisonment counts. (S. 16-17).

Parreno, through his appellate counsel, appealed his conviction in the Appellate Division, First Department, claiming that (1) his trial counsel was ineffective, (2) the court improperly

7

admitted evidence during the People's direct case refuting his alibi, and (3) the court failed to include an alibi instruction in its charge and erred in including an interested witness charge. See Appellant's Brief, dated Nov. 32 [sic], 2002 (reproduced as Ex. A to Declaration in Opposition to Petition for a Writ of Habeas Corpus, filed Aug. 12, 2005 (Docket #7) ("Opp. Decl.")) ("App. Br."), at 14-22.

The Appellate Division affirmed Parreno's conviction. See People v. Parreno, 306 A.D.2d 176 (1st Dep't 2003). It held that the "totality of the record" established that Parreno received effective assistance of counsel and that the absence of an alibi charge did not deprive him of a fair trial since the "court's charge conveyed the same principles as those underlying an alibi instruction." Id. at 176-77. The court declined to review Parreno's evidentiary and interested witness claims because he had failed to preserve them at trial. Id. at 177.

Parreno sought leave to appeal this ruling to the New York Court of Appeals, which denied leave on October 30, 2003. See People v. Parreno, 100 N.Y.2d 644 (2003).

C. The Instant Petition

Parreno timely submitted the instant petition to the Pro Se Office in October 2004. See Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed December 23, 2004 (Docket #2) ("Petition"); Memorandum of Law (attached to Petition) ("Pet. Mem."). The petition contends that he is entitled to relief because: (1) the prosecution was allowed to introduce hearsay evidence in its case-in-chief to rebut his alibi defense; (2) his trial attorney was ineffective for failing to request an alibi instruction; and (3) the trial court's interested witness charge was incorrect. See Petition ¶¶ 12(A), (B); Pet. Mem. at 1-11. On August 12, 2005, Respondent filed its opposition papers. See Memorandum of Law in

Opposition to Petition for a Writ of Habeas Corpus, dated Aug. 12, 2005 (Docket #6) ("Resp. Mem."); Opp. Decl. Parreno submitted a response on August 17, 2005. See Traverse, dated Aug. 17, 2005 (Docket #9).

D. Subsequent Filings

On January 8, 2006, Parreno filed papers requesting an "evidentiary hearing." See Notice of Motion, dated Jan. 8, 2006 (Docket #12); Affidavit in Support of Motion for Evidetiary [sic] Hearing, dated Jan. 8, 2006 ("Pet. Aff.") (attached, with documents, to Notice of Motion). His papers included photocopies of three items. The first item is a notarized letter dated March 7, 2001, from a Martha Jimenez, stating that between 8:00 and 9:00 p.m. on the night of March 11, 2000, she saw Parreno in the apartment building where they both lived, and that he subsequently left his apartment with his luggage. The second item appears to be an Ecuadoriana Airlines ticket or boarding pass that refers to a flight on March 11 at 11 p.m. but contains no name. The remaining items appear to be Ecuadorian immigration documents: one, dated March 22, 2002, from the "Direccion Nacional de Migracion" in Ecuador, indicates that Parreno entered Guayaquil on March 11, 2000; the other, dated April 17, 2002, lists Parreno's entrances into Guayaquil on March 11 and May 26, 2000, and his departures from Guayaquil on March 4, May 21, and July 11, 2000. Parreno also submitted an affidavit in which he states he is "actually innocent of committing the crime in question by reason of having been elsewhere when the crime was committed." Pet. Aff. ¶ 1. He requests that "an immediate hearing be conviened [sic] by the court" – apparently to consider the attached immigration documents, which Parreno asserts "exonerat[e] [him] from having been at all present at the scene of the crime." Id. ¶ 4.

The respondent filed a letter in reply.  <u>See</u> Letter from Ashlyn H. Dannelly, dated Jan. 25, 2006.

II.  <u>STANDARD OF REVIEW</u>

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground."  <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001) (internal quotation marks and citations omitted).  As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited.  <u>See</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001) (internal quotation marks omitted); <u>accord</u> <u>Rosa v. McCray</u>, 396 F.3d 210, 220 (2d Cir.), <u>cert.</u> <u>denied</u>, 126 S. Ct. 215 (2005) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision.").

In <u>Williams v. Taylor</u>, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the

governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405-06 (2000). Williams also held that habeas relief is available under the "'unreasonable application'" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable." Id. at 409.

In addition, under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. See, e.g., id. at 68.

III. DISCUSSION

A. The Evidentiary Claim

Parreno claims that the prosecution was "allowed to introduce hearsay evidence" in its case-in-chief regarding an alibi defense he had not yet made, thus improperly shifting to him the burden of proving this alibi. See Petition ¶ 12(B); Pet. Mem. at 6-8; App. Br. at 17-21. Specifically, Saima Majid, a paralegal in the New York County District Attorney's office, testified for the prosecution about documents she had obtained regarding Parreno's travel into

11

and out of Ecuador, the charts she had prepared based on those documents, and the ways in which those documents differed from the ones Parreno himself had turned over.  (Majid: T. 332-347).  The purpose of this testimony was to undermine the claimed authenticity of Parreno's own documents.  While Parreno states that this evidence was introduced "[o]ver objection," see Petition ¶ 12(B), there is no record in the trial transcript of any objection to these documents during Majid's testimony.  Indeed, the court asked Parreno's lawyer, Harold Ehrentreu, on five separate occasions whether he had any objections to the proffered evidence, and each time he said no.  (T. 336, 338, 341, 344, 346).[2]  The Appellate Division subsequently held that Parreno "did not preserve" this claim.  Parreno, 306 A.D.2d at 177.  Respondent now argues that the claim is barred from federal habeas consideration because it was procedurally defaulted in the state courts.  See Resp. Mem. at 19-23.

Where a state court rejects a petitioner's claim because the petitioner failed to comply with a state procedural rule, the procedural default may constitute an adequate and independent ground for the state court decision.  See, e.g., Coleman v. Thompson, 501 U.S. 722, 729-30, 749-50 (1991).  Such a default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice,'" Harris v. Reed, 489 U.S. 255, 262 (1989) (citations omitted), which requires a petitioner to demonstrate "actual innocence," Calderon v. Thompson, 523 U.S. 538, 559 (1998); accord

---

[2]At one point, Ehrentreu stated, "no objection, except for those already noted before." (T. 341).  This appears to be a reference to the charge conference, during which Ehrentreu challenged the suggestion that the name "G. Carranza" on a flight manifest dated April 10, 2000, referred to Parreno.  (T. 314-320).

Dretke v. Haley, 541 U.S. 386, 388 (2004); Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002); see also Harris, 489 U.S. at 264 n.10 ("as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas").

Here, the Appellate Division's rejection of Parreno's claim as unpreserved was apparently made pursuant to N.Y. Crim. Proc. Law ("CPL") § 470.05(2), which precludes appellate review of any ruling made by the trial court unless a protest was made to the ruling "at any . . . time when the court had an opportunity of effectively changing the same." Id. To preserve a question of law for appellate review in New York, a party must make the trial court aware of its objection while there is time to cure the alleged error. See, e.g., People v. Martin, 50 N.Y.2d 1029, 1031 (1980) (citing cases) (internal quotation marks omitted).

That the Court of Appeals issued Parreno a summary denial of leave to appeal is of no moment because where "the last reasoned opinion on the claim explicitly imposes a procedural default" – as is true of the Appellate Division's decision in this case – a federal habeas court "will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); see also Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (federal habeas court looks to Appellate Division's reliance on procedural bar where Court of Appeals issues summary denial of leave to appeal), cert. denied, 520 U.S. 1106 (1997). Thus, the procedural default relied upon by the Appellate Division constituted an "independent" state law ground for the decision.

The remaining question is "whether the state ground relied upon is 'adequate' to

preclude federal habeas review." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999). "[A] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." Id. (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). Whether application of the procedural rule is "firmly established and regularly followed" must be judged in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee v. Kemna, 534 U.S. 362, 386-87 (2002)). The Second Circuit has set forth the following "guideposts" for making this determination:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Id. (citing Lee, 534 U.S. at 381-85).

The first guidepost is not relevant here because "the lack of objection by a party 'would not, almost by definition, be mentioned by the trial court.'" Monroe v. Kuhlman, 433 F.3d 236, 242 (2d Cir. 2006) (citation omitted). In any event, the lack of objection was "relied on" by the trial court in the sense that, had an objection been made, it would have allowed the trial court to review and weigh Parreno's challenge to the evidence. Cf. Cotto, 331 F.3d at 243 (while "the likely impact of a timely objection involves a certain degree of speculation," it is possible that "the trial court may well have come to a different conclusion" had the reasons for the objection been stated).

14

As for the second consideration, it is well-settled under New York law that, "in order to preserve a claim of error in the admission of evidence" for appellate review, there must be a timely, sufficiently specific objection in the trial court.  See People v. Gray, 86 N.Y.2d 10, 19 (1995); accord People v. Fleming, 70 N.Y.2d 947, 948 (1988); People v. West, 56 N.Y.2d 662, 663 (1982).  Thus, state case law indicates that "compliance with the rule was demanded in the specific circumstances presented."  Cotto, 331 F.3d at 240.

The final guidepost also favors the respondent.  Parreno did not "substantially comply" with CPL § 470.05 in light of the fact that he never alerted the trial court that he objected to the evidence being admitted.

Thus, the Appellate Division's reliance on the state preservation rule in this instance constitutes both an adequate and independent ground for the state court decision.  Consistent with this conclusion, federal habeas courts have denied relief with respect to claims rejected as unpreserved by the New York state courts where, as here, the defendant failed to alert the trial court to the specific issue upon which he seeks review.  See, e.g., Garcia, 188 F.3d at 78-79 (citing cases); Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995); Jones v. Duncan, 162 F. Supp. 2d 204, 213 (S.D.N.Y. 2001).

Although procedurally defaulted claims are deemed exhausted for habeas purposes, an exception exists where "the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"  Harris, 489 U.S. at 262 (citations omitted); accord Coleman, 501 U.S. at 749-50; Bossett, 41 F.3d at 829.  In order to show a "fundamental miscarriage of justice," Harris, 489 U.S. at 262, a petitioner must demonstrate "actual

15

innocence." <u>Calderon</u>, 523 U.S. at 559; <u>accord</u> <u>Washington v. James</u>, 996 F.2d 1442, 1447 (2d Cir. 1993), <u>cert. denied</u>, 510 U.S. 1078 (1994).

Parreno has not suggested that there was "cause" for the procedural default. His most recent submission states that he is "actually innocent" of the crime charged. But this submission is far from sufficient to overcome the procedural bar. An actual innocence claim "requires petitioner to support his allegations of constitutional error with new reliable evidence." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995); <u>see</u> <u>also</u> <u>Doe v. Menefee</u>, 391 F.3d 147, 161 (2d Cir. 2004) (actual innocence claim must be supported "'with <u>new</u> reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.'") (quoting <u>Schlup</u>, 513 U.S. at 324) (emphasis added); <u>accord</u> <u>D'Alessandro v. Fischer</u>, 2005 WL 3159674, at *8 (S.D.N.Y. Nov. 28, 2005). Because Parreno has not shown or even alleged that the documents submitted in support of his request for a hearing are new – and, indeed, the only dated documents show that they were created in 2001 and 2002 – and because these documents do not by themselves show that Parreno is innocent, there is no basis for finding that Parreno should be relieved from the procedural bar.

B. The Interested Witness Charge

Parreno claims that the trial judge incorrectly charged the jury that Parreno was the "only interested witness." <u>See</u> Petition ¶ 12(A); Pet. Mem. at 9-11; App. Br. at 21-22. The Appellate Division concluded that this claim too was procedurally barred. While the Appellate Division made no explicit reference to this claim, it stated that Parreno's "remaining contentions" were "unpreserved." 306 A.D.2d at 177. Because Parreno had raised three claims on appeal, and the Appellate Division ruled explicitly on the first two, the court was necessarily referring to his

16

third and final claim.  Further, its statement that the claims were "unpreserved" is sufficient to show that it was relying on a procedural bar.  See, e.g., Harris, 489 U.S. at 265 n.12.  The only procedural bar put forward by the prosecution in the Appellate Division was the applicability of New York's contemporaneous-objection law, see Brief for Respondent, dated Apr. 2003 (reproduced as Ex. B to Opp. Decl.), at 63.  Thus, this ruling constituted an "independent" state law ground for the decision.

The ruling was also "adequate" inasmuch as the preservation rule is "firmly established and regularly followed" by New York State.  Garcia, 188 F.3d at 79.  Both statutory and New York case law indicate that a party must object to a jury charge in order to preserve the issue for appeal.  See, e.g., CPL § 470.05; People v. Nuccie, 57 N.Y.2d 818, 819 (1982); People v. Moultrie, 6 A.D.3d 730, 730 (2d Dep't 2004); People v. Moore, 300 A.D.2d 198, 198 (1st Dep't 2002); People v. Mobley, 176 A.D.2d 211, 211-12 (1st Dep't 1991).  Consistent with this conclusion, the Second Circuit has squarely held that the failure to object to a jury instruction at trial constitutes a procedural default under New York law barring habeas review.  See Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997) ("A state prisoner who fails to object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review."); accord Cummings v. Artuz, 237 F. Supp. 2d 475, 485 (S.D.N.Y. 2002).

Because, as already discussed, Parreno has not shown cause for the default or a fundamental miscarriage of justice, see, e.g., Harris, 489 U.S. at 262, his claim is barred on federal habeas review.

C.  The Ineffective Assistance of Counsel Claim

Parreno's remaining claim is that he was denied the effective assistance of counsel when his trial attorney, Harold Ehrentreu, "failed to request an alibi instruction," and that this failure resulted in actual prejudice when the court did not give the jury an alibi instruction.  See Petition ¶ 12(A); Pet. Mem. at 1-5.  Respondent argues that Parreno cannot satisfy either prong of the test laid out in Strickland v. Washington, 466 U.S. 668 (1984), and that the Appellate Division's ruling on this claim was not "contrary to" or an "unreasonable application" of Supreme Court precedent.  See Resp. Mem. at 28-35; 28 U.S.C. § 2254(d)(1).

The Appellate Division ruled with respect to Parreno's ineffective assistance claim as follows:

> The totality of the record establishes that defendant received effective assistance of counsel (see People v. Benevento, 91 N.Y.2d 708, 713-714; People v. Hobot, 84 N.Y.2d 1021, 1024), notwithstanding the fact that his trial counsel did not request an alibi charge concerning defendant's unbelievable and uncorroborated alibi testimony (see People v. Coleman, 283 A.D.2d 321, lv. denied 96 N.Y.2d 917). The court's charge conveyed the same principles as those underlying an alibi instruction (see People v. Warren, 76 N.Y.2d 773; People v. Anderson, 268 A.D.2d 368, lv. denied 95 N.Y.2d 793), and the absence of an alibi instruction did not deprive defendant of a fair trial.

Parreno, 306 A.D.2d at 176-77.  Because the Appellate Division based this decision "on the substance of the claim advanced," Parreno's ineffective assistance of counsel claim was "adjudicated on the merits."  See Sellan, 261 F.3d at 311.  Accordingly, the deferential standard of review articulated in 28 U.S.C. § 2254(d) is applicable to this Court's review of the claim.

1.  Law Governing Claims of Ineffective Assistance of Counsel

To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the two-part test articulated in Strickland v. Washington, 466 U.S. at 687-96.  The Strickland test has

been characterized as "rigorous" and "highly demanding."  <u>Pavel v. Hollins</u>, 261 F.3d 210, 216

(2d Cir. 2001) (internal quotation marks and citations omitted).  To meet <u>Strickland</u>, a petitioner

must show (1) "that counsel's representation fell below an objective standard of reasonableness";

and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 688, 694; <u>accord</u>

<u>Rompilla v. Beard</u>, 125 S. Ct. 2456, 2462 (2005); <u>Pham v. United States</u>, 317 F.3d 178, 182 (2d

Cir. 2003); <u>see also</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003) ("[A] defendant

claiming ineffective counsel must show that counsel's actions were not supported by a

reasonable strategy and that the error was prejudicial.").

    In evaluating the first prong – whether counsel's performance fell below an objective

standard of reasonableness – "'[j]udicial scrutiny . . . must be highly deferential'" and the

petitioner must overcome the "'presumption that, under the circumstances, the challenged action

might be considered sound trial strategy.'"  <u>Bell v. Cone</u>, 535 U.S. 685, 698 (2002) (quoting

<u>Strickland</u>, 466 U.S. at 689 (internal quotation marks omitted)); <u>see also</u> <u>Dunham v. Travis</u>, 313

F.3d 724, 730 (2d Cir. 2002) (affording counsel a strong presumption of competence).  In

assessing whether an attorney's conduct was constitutionally deficient, "[t]he court must . . .

determine whether, in light of all the circumstances, the identified acts or omissions were outside

the wide range of professionally competent assistance."  <u>Strickland</u>, 466 U.S. at 690; <u>accord</u>

<u>Pavel</u>, 261 F.3d at 216.

    With respect to the second prong – whether there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different – a court

"requires some objective evidence other than defendant's assertions to establish prejudice."

Pham, 317 F.3d at 182 (citing United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998) (per curiam)). "A 'reasonable probability' in this context is one that 'undermine[s] confidence in the outcome.'" Pavel, 261 F.3d at 216 (quoting Strickland, 466 U.S. at 694) (alteration in original).

2. Analysis

While there are two prongs to the inquiry, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; accord, e.g., Lugo v. Kuhlmann, 68 F. Supp. 2d 347, 371 (S.D.N.Y. 1999); Franza v. Stinson, 58 F. Supp. 2d 124, 134 (S.D.N.Y. 1999); Torres v. Irvin, 33 F. Supp. 2d 257, 277 (S.D.N.Y. 1998).

It is simpler to dispose of Parreno's claim based on the second prong of the inquiry: that is, whether Parreno suffered actual prejudice due to the lack of an alibi instruction. Under this prong, the question is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The New York pattern alibi instruction reads in relevant part:

As I have indicated to you, the defendant does not have the burden of proof in a criminal case. Rather, the prosecution must prove the defendant's guilt beyond a reasonable doubt and must also disprove the alibi defense beyond a reasonable doubt.

It is for you, the jury, to determine whether or not the alibi should be believed. Therefore, if the evidence as to the alibi in and of itself, or in connection with all the other evidence in this case, raises a reasonable doubt in your minds as to whether the defendant(s) was (were) present at the time and place when and where the crime(s) alleged in the indictment was (were) committed, then the

defendant must be found not guilty.  The defendant is not obliged to establish that it was impossible for him (her) to commit the crime charged.  If, under the evidence presented to prove the defendant's alibi, it may still have been possible for the defendant to have committed the crime, it is for you to determine whether the defendant availed himself (herself) of that possibility.

In conclusion, if the proof as to alibi, in and of itself, or when taken into consideration with all the other evidence, creates a reasonable doubt as to the defendant's guilt, he (she) is entitled to be found not guilty.

On the other hand, if the proof of alibi does not raise a reasonable doubt in your minds as to the defendant's guilt, then you must determine if the People have proven his (her) guilt beyond a reasonable doubt as to all of the elements of the crimes in the indictment, as I shall hereafter instruct you upon the law applicable in this case.

Howard G. Leventhal, 1 Charges to Jury & Requests to Charge in Crim. Case in N.Y. § 5:7 (2005).

While the pattern instruction was not given, the actual instructions given to the jury at Parreno's trial encompassed the key concept it contains: specifically, that the burden always remained on the prosecution to prove Parreno's guilt and that this burden remained even though the defendant testified.  First, at the beginning of the trial, the court told the jury: "[T]he defendant is presumed innocent.  That presumption remains with the defendant throughout the entire trial, unless and until the people prove the defendant guilty beyond a reasonable doubt." The court added, "the burden of proof is on the [P]eople.  The defendant has no burden to prove any innocence."  (T. 134).  At the end of the trial, the court told the jury that "the [P]eople must prove a defendant's guilt beyond a reasonable doubt," (T. 454), and gave a detailed instruction that the burden of proof remains with the prosecution throughout the trial:

Under our law every defendant is presumed innocent and that presumption remains with the defendant throughout the trial.  The defendant is cloaked with the protection of that presumption even when you go into the jury room to start your deliberations, and it remains with the defendant until such time as you the jurors are convinced beyond a

reasonable doubt from the proof submitted that the defendant is guilty of the crimes charged. It is only at that time that the presumption of innocence is destroyed and that you may be justified in finding the defendant guilty of the crimes charged.

(T. 455).

The trial court re-emphasized this point in the context of Parreno's testimony, stating, "I must stress that the [P]eople's burden of proof does not shift to the defendant because the defendant testified on his own behalf. The people must establish each and every element of each crime . . . beyond a reasonable doubt." (T. 456).

Parreno's counsel argued the alibi defense at length during his summation. See, e.g., T. 403 ("You can't be at the airport or on the way to the airport taking a flight and be robbing a place in Manhattan at the same time."); (T. 405) ("If he wasn't on that flight, how did he know it was delayed?"); (T. 406) ("He was on that flight."); (T. 410) ("The truth is he left on the 11th"); (T. 414) ("He was on the flight"). He also pointed out gaps in the prosecution's case with regard to Parreno's alibi, making it plain that the prosecution had the burden of showing the alibi was false. See T. 413 ("Has anybody come in here . . . and said he was not on that flight?"); (T. 414) ("They haven't shown you one shred of evidence that he wasn't on the plane.").

Given the instructions to the jury and the arguments of counsel, there is no "reasonable probability" that the addition of a specific alibi instruction would have made any difference to the outcome of this case. The alibi defense in this case was particularly weak, as Parreno had no corroboration for his presence on the March 11 flight apart from a document whose authenticity was open to substantial question. Moreover, the other evidence against Parreno was strong. In addition to the eyewitness identification by the doorman, see Martinez: T. 196, there was ample evidence that the robberies had to have been committed by an insider who knew where cash

receipts were kept (Borja: T. 158-59, 162; Serna: T. 186; Arbalaez: T. 213, 226; Osorio: T. 237;

Parreno: T. 385); that Parreno had telephoned the particular garages involved to determine who

would be working during certain shifts (Serna: T. 184-85; Dederle: T. 256-57); and that the

robberies occurred at times when Parreno knew those shifts would be manned by inexperienced

employees (Arbalaez: T. 205; Osorio: T. 230). Finally, the car used to commit one of the

robberies was found a block and a half from Parreno's house (Sumpter: T. 265-66; Kennedy:

T. 274-75). Parreno was the only person who had worked at both garages and lived in that area

of Queens (Kennedy: T. 331-32).

Other case law has recognized the adequacy of general burden-of-proof instructions even

where evidence has been introduced that would support a more specific alibi instruction. Thus,

in United States v. McCall, 85 F.3d 1193 (6th Cir. 1996), a case arising on direct appeal, the

Sixth Circuit held that omission of an alibi instruction is not plain error "as long as the jury is

otherwise correctly instructed concerning the government's burden of proving every element of

the crimes charged, and the defendant is given a full opportunity to present his alibi defense in

closing argument." Id. at 1196; see also Ducket v. Godinez, 67 F.3d 734, 744 (9th Cir. 1995),

cert. denied, 517 U.S. 1158 (1996) (commenting that this court has "never held . . . that failure to

give a specific alibi instruction is necessarily a constitutional violation. Nor has any other

circuit.") (emphasis omitted). New York State law itself recognizes this principle. Thus, in

People v. Warren, 76 N.Y.2d 773 (1990), the New York Court of Appeals held that the failure to

give an alibi jury instruction is not reversible error where "the charge as a whole conveyed the

necessary information regarding the [prosecution's] burden of proof." Id. at 775 (citations

omitted); accord People v. Davila, 165 A.D.2d 669, 669 (1st Dep't 1990) ("Legally sufficient

evidence was introduced to warrant the requested charge. Nevertheless, . . . the court's refusal to give such an instruction does not require reversal, since the charge as a whole adequately explained the requisite burden of proof.").

Consistent with these principles, federal habeas cases have recognized the lack of prejudice in circumstances similar to those present here. In Cruz v. Greiner, 1999 WL 1043961, at *17 (S.D.N.Y. Nov. 17, 1999), the court held that there was no prejudice under Strickland resulting from a court's failure to give an alibi instruction where the jury was otherwise charged on burden of proof. Similarly, in Wyniemko v. Smith, 2000 WL 760704, at *8 (E.D. Mich. May 10, 2000), the court held that there was no prejudice where alibi evidence was presented at trial and where counsel discussed the alibi in closing arguments. Cf. Jones v. Kemp, 794 F.2d 1536, 1540-41 (1986) (11th Cir. 1986) (no error in failing to instruct on alibi in absence of request for instruction, noting that "[t]he court gave proper instructions on the elements of the crime and burden of proof, and [the petitioner] has demonstrated no prejudice from the absence of a specific alibi instruction").

In sum, Parreno's ineffective assistance of counsel claim is without merit and thus the Appellate Division's ruling on this claim was not contrary to, or an unreasonable application of, Supreme Court law. See 28 U.S.C. § 2254(d)(1).[3]

---

[3]Parreno's petition might be construed as raising a claim that – apart from the arguments regarding ineffective assistance of counsel – the trial court was independently obligated to give an alibi instruction. See Pet. Mem. at 5. This claim was not presented to the Appellate Division, however, and thus is unexhausted. Because the New York State courts would not permit its exhaustion now, the claim cannot provide a basis for habeas relief. See, e.g., Bossett, 41 F.3d at 828-29. In any event, there is no right under the federal constitution to a specific alibi instruction. See, e.g., Sanders v. Scully, 1991 WL 35498, at *2 (E.D.N.Y. Mar. 1, 1991); Matos v. Miles, 737 F. Supp. 220, 223 (S.D.N.Y. Mar. 9, 1990).

D.  Actual Innocence Claim

To the extent that Parreno's January 8 filing is intended to put forth a substantive claim of actual innocence, no such claim is cognizable on habeas review.  See Herrera v. Collins, 506 U.S. 390, 400 (1993); United States v. Quinones, 313 F.3d 49, 67-68 (2d Cir. 2002).  To the extent Parreno is seeking only a hearing on his new evidence, this Court cannot hold such a hearing because the evidence does not bear on an existing constitutional claim.  See, e.g., White v. Keane, 51 F. Supp. 2d 495, 504 n.8 (S.D.N.Y. 1999).[4]

## Conclusion

For the foregoing reasons, Parreno's petition is denied.  Because Parreno has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).   The Clerk is requested to enter judgment.

SO ORDERED.

Dated: March 20, 2006
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[4]Moreover, Parreno has not satisfied the statutory requirements for an evidentiary hearing as outlined in 28 U.S.C. § 2254(e)(2).  For example, Parreno has not shown that the factual predicate "could not have been previously discovered through the exercise of due diligence."  28 U.S.C. § 2254(e)(2)(A)(ii).

Copies sent to:

Marcos Parreno
No. 01-A-4914
Downstate Correctional Facility
P.O. Box F
Fishkill, New York 12524

Ashlyn H. Dannelly
Assistant Attorney General
120 Broadway
New York, New York 10271

### D. Actual Innocence Claim

To the extent that Parreno's January 8 filing is intended to put forth a substantive claim of actual innocence, no such claim is cognizable on habeas review. See Herrera v. Collins, 506 U.S. 390, 400 (1993); United States v. Quinones, 313 F.3d 49, 67-68 (2d Cir. 2002). To the extent Parreno is seeking only a hearing on his new evidence, this Court cannot hold such a hearing because the evidence does not bear on an existing constitutional claim. See, e.g., White v. Keane, 51 F. Supp. 2d 495, 504 n.8 (S.D.N.Y. 1999).[4]

### Conclusion

For the foregoing reasons, Parreno's petition is denied. Because Parreno has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). The Clerk is requested to enter judgment.

SO ORDERED.

Dated: March 20, 2006
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[4]Moreover, Parreno has not satisfied the statutory requirements for an evidentiary hearing as outlined in 28 U.S.C. § 2254(e)(2). For example, Parreno has not shown that the factual predicate "could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii).

Copies sent to:

Marcos Parreno
No. 01-A-4914
Downstate Correctional Facility
P.O. Box F
Fishkill, New York 12524

Ashlyn H. Dannelly
Assistant Attorney General
120 Broadway
New York, New York 10271